Gary L. FERGUSON, Appellant
(Defendant),

v.

Ronald A. REED, Appellee (Plaintiff).

No. 91–127.

Supreme Court of Wyoming.

Dec. 31, 1991.

James R. McCarty, Casper, for appellant.

Donald E. Chapin of Crowell and Chapin, P.C., Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Gary Ferguson appeals from the lower court's findings that Appellee Ronald Reed substantially complied with the parties' 1981 agreement and that Ferguson breached their 1983 agreement by failing to make the required payments.

We affirm.

Ferguson raises the following issues:

1. Whether the Trial Court erred in refusing to permit the introduction of extrinsic evidence concerning the meaning of the June 5, 1981, Contract between the parties.

2. Whether the Trial Court erred in finding that the Appellee Reed was in substantial compliance with his obligations under the agreements between the parties.

3. Whether the Trial Court erred in finding that the parties modified the June 5, 1981, Agreement in November, 1983.

4. Whether the Court erred in rejecting Ferguson's contention that the November, 1983, Note had been paid and settled when Reed assumed ownership of Ferguson's interest in Middle Forty Partnership in 1986.

This dispute stems from two agreements entered into by Reed and Ferguson in the early 1980's. In a 1981 agreement, Reed agreed to convey to Ferguson Reed's one-fourth interest in Prime Partners, a partnership, and a one-half undivided interest in some undeveloped land west of Casper.

Upon receiving Reed's interest in the land, Ferguson executed and delivered a $240,000 promissory note to Reed which was secured by a mortgage on the property. Ferguson then transferred his interest in the property to Prime Partners. Apparently, Ferguson mortgaged the property before he transferred it to Prime Partners so the promissory note would not become a partnership debt.

Other pertinent provisions of the 1981 agreement required: (1) Ferguson to convey his interest in Red Barns of Casper, a general partnership, to Reed, and Reed to assume any debts or liabilities which were derived from Ferguson's interest in the partnership; (2) Ferguson to convey his one hundred shares of Peaches Inc. stock to Reed; and (3) Reed to release his mortgage on 16.5 acres of land when Ferguson requested the release and provided a legal description of the specific acres he wanted released.

In 1983, after some dispute over the 1981 agreement, the parties orally agreed that Reed would release Ferguson's $240,000 promissory note and mortgage. In exchange for Reed's release, Ferguson executed a $75,000 promissory note which was secured by a conditional assignment to Reed of Ferguson's undivided one-eighth interest in the Middle Forty Partnership, a general partnership. Ferguson also conveyed his interest in various other receivables and real estate to Reed.

Ferguson failed to make any payments on the $75,000 promissory note, prompting Reed to initiate this suit. As a defense, Ferguson claimed that Reed took Ferguson's one-eighth interest in the Middle Forty Partnership to satisfy the $75,000 promissory note and also counterclaimed that Reed breached their 1981 agreement. The trial court found that Reed substantially complied with both agreements and that Ferguson breached their 1983 agreement by failing to make payments on the $75,000 promissory note.

### Extrinsic Evidence

Ferguson contends that the lower court erred in not permitting the admission of

extrinsic evidence to interpret paragraph 1 of the 1981 agreement. Paragraph 1 read as follows:

1. Reed is the owner of a one-fourth interest in Prime Partners, a partnership consisting of Keith Spencer, Gary L. Ferguson, and Ronald A. Reed, owning certain real property, a one-half undivided interest to which is to be conveyed to Ferguson and then to Prime Partners, said real estate is described on Exhibit "A", attached which is included herein by reference as though set forth in full. During the time that Ferguson has title, free of all liens and encumb[ ]rances thereto, except for the mortgages to the First Wyoming Bank of Casper, dated in March, 1980, Ferguson promises and agrees to execute a promis[s]ory note secured by a mortgage to Reed in the face amount of Two hundred and fo[ ]rty thousand dollars, ($240,000.00) with interest thereon at the rate of 10% per annum on the unpaid balance, computed from June 1st, 1981, until paid. The principal and interest shall be paid to Reed, at the rate of Two thousand three hundred and sixteen dollars and five cents, ($2,316.05) per month, beginning July 1st, 1981, until all of the principal and interest shall have been paid and if not completely paid by June 1st, 2001, the unpaid balance shall become due and payable. Ferguson takes title to the land and the partnership of Prime Partners from Reed, subject to all debts and obligations after the aforesaid mortgage has been filed, Ferguson agrees to convey the one-half undivided interest that has vested in him, to Prime Partners.

■■■ When reviewing Ferguson's contention, we are governed by our familiar rules of contract construction. Extrinsic

evidence will not be admitted to contradict the plain meaning of an unambiguous agreement. *Klutznick v. Thulin*, 814 P.2d 1267 (Wyo.1991). If a contract is ambiguous, the parties' intent may be determined by the use of extrinsic evidence. *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595 (Wyo. 1989). An ambiguous contract is one which is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning. *Id.* Whether a contract is ambiguous is a question of law; thus, this Court is at liberty to make an independent determination as to the existence of an ambiguity. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, 612 P.2d 463 (Wyo. 1980).

Ferguson lists five clauses [1] from paragraph 1 of the 1981 agreement and merely asserts the language was ambiguous. That mere assertion does not make the agreement ambiguous, and we are unable to detect any ambiguity. We, therefore, hold the trial court was correct in excluding extrinsic evidence to explain the terms of the agreement.

### Substantial Performance

■■■ Ferguson next disputes the trial court's finding that Reed substantially complied [2] with his obligations under the agreements. Ferguson lists three duties which he alleges Reed failed to substantially perform. First, Ferguson argues that Reed failed to discharge Ferguson's debts and liabilities relating to Red Barns of Casper. As was pointed out at trial, however, the 1981 agreement required Reed only to assume, not to discharge, the liabilities. Ferguson also testified that he had never been contacted to pay any of the debts nor had he been told any of the debts were

---

1. The clauses are:

  (a) Reed is owner of one-fourth (¼) of Prime Partners;
  (b) That the partnership "owns certain real property";
  (c) That a one-half (½) undivided interest in the real property would be deeded to Ferguson;
  (d) That the property would then be deeded to Prime Partners;

(e) That "Ferguson takes title to the land and the partnership of Prime Partners from Reed, subject to all debts and obligations after the aforesaid mortgage has been filed, Ferguson agrees to convey the one-half (½) undivided interest that has vested in him, to Prime Partners[."]

2. We interpret Ferguson's use of the term "substantial compliance" to be synonymous with "substantial performance."

delinquent. Second, Reed never released 16.5 acres of land when Ferguson requested that he do so. Reed testified that he did not release the land because Ferguson defaulted on the $240,000 promissory note and the requested acres were not within the acreage he transferred to Ferguson. Finally, Ferguson claims that Reed failed to convey the property free of encumbrances other than those mentioned in the 1981 agreement. The trial court heard testimony that, under the terms of the deed conveying the mortgaged property, Ferguson took the property subject to all encumbrances of record.

■ Whether or not Reed substantially performed under the agreements is a question of fact. *See Saunders v. Sharp*, 793 P.2d 927 (Utah App.), *cert. granted*, 804 P.2d 1232 (Utah 1990), *and remanded*, 806 P.2d 198 (1991); and *All Seasons Water Users Association, Inc. v. Northern Improvement Company*, 399 N.W.2d 278 (N.D.1987), *after remand*, 417 N.W.2d 831 (1988). When this Court is reviewing a trial court's finding of fact, we will reverse only if the finding is clearly erroneous or contrary to the great weight of the evidence. *Eddy v. First Wyoming Bank, N.A.–Lander*, 750 P.2d 294 (Wyo.1988).

Reed, in accord with the 1981 agreement, transferred his interest in Prime Partners and the undeveloped land to Ferguson, and he also complied with the 1983 agreement by releasing the $240,000 promissory note and mortgage. As to the claimed deficiencies by Reed, the trial court had before it evidence which controverted each alleged failing. We cannot say the trial judge's finding that Reed substantially performed under the agreements was clearly erroneous or against the great weight of the evidence.

### Modification

Ferguson claims that the trial court erred in finding the parties' 1983 agreement modified the 1981 agreement. Ferguson essentially argues that insufficient evidence existed to find that, when Ferguson entered into the 1983 agreement, he intended to waive Reed's obligations under the 1981 agreement. This argument fails because the trial court did not find Reed's obligations under the 1981 agreement were waived once the parties entered into the 1983 agreement. Rather, the trial court found that Reed was still required to perform under the 1981 agreement. In his decision letter, the trial judge determined that Reed was in "substantial compliance with his obligations under the *agreements*." (Emphasis added.) By using the plural of agreement, the trial judge declared that Reed had complied with both the 1981 agreement and the 1983 agreement. Since the trial judge found that Reed substantially complied with the 1981 agreement, the trial judge could not also make an inconsistent finding that the 1983 agreement waived Reed's obligations under the 1981 agreement.

### Middle Forty Partnership Interest

■ Ferguson's final claim is that the $75,000 promissory note was satisfied because Reed acquired Ferguson's one-eighth interest in the Middle Forty Partnership. Although not stated as such by Ferguson, the real issue is whether sufficient evidence existed to support the trial court's finding that Reed had not acquired Ferguson's one-eighth interest in satisfaction of the $75,000 promissory note.

Supporting Ferguson's position was the fact that Reed originally owned a one-eighth interest in the Middle Forty Partnership, but, starting in 1986, Reed's tax returns showed he owned a one-fourth interest. Ferguson also testified that on his own 1986 tax return he reported income in the amount of $75,000 for the sale of his one-eighth interest. Reed explained that he never asserted a one-fourth interest in the partnership assets and that he paid the additional taxes only to protect his security interest in the conditional assignment of Ferguson's one-eighth share. Additional support for Reed's position was Ferguson's testimony that he never informed Reed that he conveyed his one-eighth interest in exchange for the promissory note.

When the sufficiency of the evidence is at issue:

"[W]e assume the evidence of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give the evidence of the successful party every favorable inference which may reasonably be drawn from it."

*Huang International, Inc. v. Foose Construction Company,* 734 P.2d 975, 979 (Wyo.1987) (quoting *DeJulio v. Foster,* 715 P.2d 182, 185 (Wyo.1986)). The evidence presented at trial could lead to different conclusions. However, we hold sufficient evidence existed to support the trial court's finding that Ferguson did not convey his one-eighth interest to Reed in satisfaction of the $75,000 promissory note.

Affirmed.