The **PRUDENTIAL PREFERRED PROPERTIES, a Wyoming corporation, Appellant (Plaintiff),**

v.

**UNDERWOOD RANCH COMPANY, a partnership; Israel Roter; Joe Bowen; and Stanley Green, Appellees (Defendants).**

No. 93–139.

Supreme Court of Wyoming.

April 26, 1994.

Paul J. Drew of Drew & Carlson, Gillette, for appellant.

W.H. Vines of Jones, Jones, Vines & Hunkins, Wheatland, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Prudential Preferred Properties (Prudential) sued the Underwood Ranch Company (Underwood) for a commission they claimed for the sale of Underwood's property. The trial court granted Underwood summary judgment holding they did not owe Prudential a commission under their listing agreement as a matter of law.

We affirm.

Prudential raises the following issues:

ISSUE I

Whether the trial court erred in denying appellant's motion for summary judgment, holding that the sale of appellees' ranch during the term of the parties' exclusive listing agreement did not entitle the appellant to a commission on the sale.

ISSUE II

Whether the trial court erred in granting appellees' motion for summary judgment, holding that the sale of appellees' ranch to Jack McGuire's relatives was excluded from the exclusive listing contract under the contract's provision excluding sales to Jack McGuire from its operation.

In turn, Underwood phrases the issues:

I. Was the exclusion in the listing agreement of "Jack McGuire" sufficient to include his nominees, the son and daughter-in-law.

II. Was there any consideration to support the extension of the listing agreement.

## FACTS

Underwood, a partnership, was attempting to sell its ranch property and retained the services of Prudential as selling real estate brokers. On November 4, 1991, Underwood and Prudential entered into an exclusive right to sell listing contract for the sale of what was commonly referred to as the Underwood Ranch in Campbell County, Wyoming. The original listing was for six months, from October 28, 1991 to April 28, 1992. The contract was on a form provided and drafted by the agents or employees of Prudential.

On page one of the four-page listing contract, Underwood agreed to pay Prudential five percent of the selling price if Prudential or anyone else sold the ranch within the time specified. On page three of the listing contract, Prudential typed in, under the "Additional Provisions" section, the following: "For the period of this listing, Jack McGuire shall be excluded from said listing." Both parties knew of Jack McGuire's interest in purchasing the ranch, and that was the reason for the exclusion.

Prudential was not able to sell the ranch before the listing expired on April 28, 1992. On May 5, 1992, at Prudential's request, Underwood entered into a six-month extension of the original listing contract. The extension agreement, also provided and drafted by Prudential, extended the listing until October 28, 1992.

On or about August 1, 1992, Underwood negotiated the sale of the ranch with Jack McGuire without the assistance or participation of Prudential. Jack McGuire agreed to purchase the ranch for $750,000. After negotiating the terms of the sale, Jack McGuire asked that the contract for warranty deed and other related documents be made in the name of his son and daughter-in-law, Clayton and Cindy McGuire. Neither Clayton nor Cindy McGuire were involved in the negotiations to purchase the ranch. Underwood agreed to Jack McGuire's request if, as a condition of sale, he would personally guarantee the payments and performance of the terms of the contract for warranty deed. Jack McGuire executed a guarantee for "payment and performance of" the contract for warranty deed, and the sale was completed on August 14, 1992, before the expiration of the extension agreement.

The trial court found that the listing contract's broker compensation provision and the corresponding provision excluding Jack McGuire were ambiguous and confusing and, as such, should be construed against Prudential. The trial court granted Underwood summary judgment and held Prudential was not entitled to a commission as a matter of law. Prudential now appeals that decision.

## DISCUSSION

Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Romero v. Hoppal,* 855 P.2d 366, 368 (Wyo.1993); W.R.C.P. 56(c). The material facts of this case are not disputed. The question we must determine, therefore, is whether Underwood was entitled to summary judgment as a matter of law.

Prudential argues that the listing agreement plainly states that a commission be paid unless the property was sold to Jack McGuire; that the sale was not to Jack McGuire because the names on the contract for warranty deed are Clayton and Cindy McGuire; and that therefore Underwood must pay the commission.

Under the "Broker Compensation" provision, appellees agreed to pay appellant a five percent commission if the property was sold by any party on or before April 28, 1992, and as provided in the extension agreement. The "Additional Provisions" section of the contract provided: "For the period of this listing, Jack McGuire shall be excluded from said listing." The "Broker Compensation" language on page one of the listing agreement is in conflict with the "Additional Provisions" language on page three, and the "Additional Provisions" section does not explain what is meant by the language "Jack McGuire shall be *excluded from said listing.*"

The listing agreement is a contract and is to be interpreted according to our well-established rules of contract construction. Contract construction and interpretation are a matter of law for the court. *True Oil Co. v. Sinclair Oil Corp.,* 771 P.2d 781, 790 (Wyo. 1989) (citing *Amoco Production Co. v. Stauffer Chemical Co.,* 612 P.2d 463, 465 (Wyo. 1980)). The determination of the parties' intent is our prime focus in construing or interpreting a contract. *True Oil,* at 790; *State v. Moncrief,* 720 P.2d 470, 474 (Wyo. 1986).

■ If the contract is ambiguous, the intent of the parties may be determined by resort to extrinsic evidence. *Ferguson v. Reed,* 822 P.2d 1287, 1289 (Wyo.1991); *True*

*Oil Co.,* 771 P.2d at 790. An ambiguous contract is one which is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning. *Ferguson,* 822 P.2d at 1289; *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595, 599 (Wyo.1989). The question of whether ambiguity exists is a question of law which may be independently determined by this court. *Ferguson,* 822 P.2d at 1289. Any ambiguity in the contract requires that it be construed against the drafters of the agreement. *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1111 n. 9 (10th Cir.1991); *McCartney v. Malm,* 627 P.2d 1014, 1020 (Wyo.1981).

■ The intention of the parties concerning the "Additional Provisions" clause excluding Jack McGuire from the listing discloses a clear intent that a commission would not be earned if Jack McGuire were to purchase the ranch. And the listing agreement does not provide, nor did the parties intend, a commission upon a sale to McGuire with the contract documents, at his request, in the name of third persons. That the parties intended to exclude any sale to Jack McGuire is clear and definite and generally agreed to by the parties.

The affidavits submitted by Underwood are not disputed. They demonstrate that Jack McGuire alone conducted all negotiations with Underwood for the purchase of the ranch without the participation of either Prudential or Clayton and Cindy McGuire. He executed a guarantee, personally ensuring the terms of the contract for sale. Having negotiated the sale and being obligated to pay by guaranteeing payment of the contract, McGuire's position was that of a purchaser. He could have received the contract in his name and then assigned it to his son and daughter-in-law, and nothing would change. The sale of the ranch was to Jack McGuire, and that fact did not change because he requested that the appellees place the names of his son and daughter-in-law on the documents as a favor to him. Appellant Underwood should not suffer a loss because of a simple compliance with that request. It was McGuire's intention from the beginning of the negotiations that he purchase the

ranch and then transfer title to his son and daughter-in-law. His designation of Clayton and Cindy McGuire as the persons to be named on the contract was not the "sale" of the ranch, but merely the transfer of title per McGuire's direction, a step-saving device for Jack McGuire. Therefore, even though Jack McGuire's son and daughter-in-law's names were on the sales contract, the sale was, for all intents and purposes, to Jack McGuire. It was a de facto sale of the ranch to Jack McGuire.

## CONCLUSION

The trial court's grant of summary judgment to the Underwood Ranch Company was correct as a matter of law. The court correctly determined the intent of the parties to be that Prudential would not receive a commission for this de facto sale to Jack McGuire.

Affirmed.