Piyush PATEL, Appellant (Defendant),

v.

Keith HARLESS and Harvey Harless, d/b/a H & H Drywall, Appellees (Plaintiffs).

No. 96–67.

Supreme Court of Wyoming.

Nov. 27, 1996.

Charles E. Graves and Loren Joseph Richards of Charles E. Graves & Associates, P.C., Cheyenne, for appellant.

Colin M. Simpson of Simpson, Kepler & Edwards, LC, Cody, for appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Piyush Patel appeals from the judgment which was entered in favor of Appellees Keith Harless (Keith) and Harvey Harless (Harvey), who were doing business as H & H Drywall. The trial court found that a mutual mistake had occurred in the formation of the parties' contract.

We reverse.

## ISSUES

Patel requests our review of the following issues:

I. Whether the evidence presented at trial supports a finding of mutual mistake[.]

II. Whether Appellees assumed the risk[.]

## FACTS

In 1993, Patel contracted with Paragon Management Inc. to provide management services for a construction project on a Days Inn located in Cody. One of Paragon's responsibilities was to locate a subcontractor who would install the drywall in the building. The project architect contacted the appellees to see whether they would be interested in

doing the job. The architect provided a set of plans and specifications for the appellees to review. When the appellees agreed to do the job, the architect sent a contract to them which provided that H & H Drywall would install and finish the drywall and all accessories according to the plans and specifications for a fixed price of $28,800. The contract also provided that H & H Drywall was required to submit a written request for a change order prior to beginning any extra work which might need to be done. The appellees reviewed the proposed contract and made some changes, but they did not change the fixed price amount, note any limitations on the square feet of drywall which would be installed, indicate any limitation on the number of drywall sheets which would be installed, or include a per sheet price. The appellees signed the contract and returned it to the architect.

H & H Drywall began installing the drywall at the motel in mid-March 1994. On March 22, 1994, Paragon gave H & H Drywall a $1,500 advance. H & H Drywall submitted a payment request for $16,585 on March 25, 1994, and received $13,426.20 on March 29, 1994. H & H Drywall received a $4,500 payment on April 20, 1994, and a $2,000 payment on April 22, 1994. The drywall installation was completed by May 7, 1994, and on that date Paragon paid $3,686 to H & H Drywall and one of its employees, jointly. H & H Drywall subsequently requested an additional payment which resulted in the total price for the job being significantly higher than the contract figure, claiming that it had installed 2,746 sheets of drywall and that it should be compensated $16 for each sheet that it had installed. Patel paid two of H & H Drywall's employees $1,170 and $1,496 to avoid having liens filed against the motel property, and it credited those amounts as payments to H & H Drywall.

The appellees recorded a lien against the motel on June 17, 1994, and thereafter filed an action to foreclose on that lien. After a bench trial, the trial court found in the appellees' favor, concluding that both parties had agreed on the total area which was to be drywalled and that they had both been mis-

taken in their estimate of the space. The trial court also concluded that, when the architect inserted the fixed price of $28,800 into the contract, he based that figure upon the rate of $16 per sheet multiplied by the number of sheets which would be required to drywall the erroneously estimated area. Patel appeals from that decision.

## STANDARD OF REVIEW

 In this type of case, we are guided by the following standard:

> The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law.... As we have said, "[w]e are ... at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other, and whether or not the trial court has reached a conclusion thereon one way or the other."

*Examination Management Services, Inc. v. Kirschbaum*, No. 95–278, 927 P.2d 686, 689 (Wyo.1996) (citations omitted) (quoting *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, 612 P.2d 463, 465 (Wyo.1980)). When the provisions of a contract are not ambiguous or uncertain, the document speaks for itself, and parol evidence which tends to show that a prior or contemporaneous oral agreement or tacit understanding was made with respect to the terms of the agreement is inadmissible. *Cordova v. Gosar*, 719 P.2d 625, 640 (Wyo.1986). This Court, however, has recognized that, even though a document is unambiguous, an exception is made in the case of mutual mistake to the rule which prohibits parol evidence from being admitted. *Schulz v. Miller*, 837 P.2d 71, 75 (Wyo.1992); *Cordova*, 719 P.2d at 640–41.

"[W]here there is no ambiguity, all conversations, contemporaneous negotiations, and

parol agreements between the parties prior to a written agreement are merged therein. In the absence of accident, fraud or mistake, parol evidence is not admissible for the purpose of contradicting, subtracting from, adding to, or varying the terms of such written instruments."

*Schinnell v. Doyle,* 6 Wash.App. 830, 496 P.2d 566, 568 (1972) (quoting *Fleetham v. Schneekloth,* 52 Wash.2d 176, 324 P.2d 429, 430 (1958)).

## DISCUSSION

Patel claims that the evidence with regard to an asserted mutual mistake was insufficient to support, by clear and convincing evidence, the trial court's finding that both parties intended to enter into a contract which provided for the installation of exactly 1,800 sheets of drywall at $16 per sheet.[1] The appellees maintain that substantial evidence did support the trial court's finding of mutual mistake in the formation of the contract.

 A contract may be canceled or reformed by reason of a mutual mistake. *Shrum v. Zeltwanger,* 559 P.2d 1384, 1386 (Wyo.1977); *see also Goodson v. Smith,* 69 Wyo. 439, 457, 243 P.2d 163, 171 (Wyo.1952). A mutual mistake is one which is reciprocal and common to both parties with each party being under the same misconception as to the terms of the written instrument. *Shrum,* 559 P.2d at 1386.

"[W]hen a mistake in a writing is claimed, the burden rests on the party claiming the mistake to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement entered into between the parties; that the mistake was mutual; and that it did not occur by or result from negligence of the party claiming it."

*Schulz,* 837 P.2d at 76 (quoting *Pfister v. Brown,* 498 P.2d 1243, 1245 (Wyo.1972)). Although an agreement may be reformed to reflect the parties' intent when a mutual mistake has occurred, the agreement cannot be revised to reflect only one party's subjective understanding. *Jamsar, Inc. v. United States,* 194 Ct.Cl. 819, 442 F.2d 930, 936 (1971). Courts should not aid those parties who have made an unwise bargain in forming their contracts. *Fulkerson v. Reese (Estate of Frederick),* 599 P.2d 550, 556 (Wyo.1979). When parties reduce a contract to writing, they must abide by its plainly stated terms. *Colorado Interstate Gas Company v. Natural Gas Pipeline Company of America,* 842 P.2d 1067, 1070 (Wyo.1992).

It appears to us the trial court decided the parties intended that a different method of compensation be used than the one specified under the contract and, therefore, found mutual mistake. The trial court ignored the fixed price provision in the contract as well as the provision which required H & H Drywall to obtain a change order before any extra work would be approved. The trial court then determined that both parties intended that the contract provide that drywall installation throughout the entire motel would be compensated at $16 per sheet regardless of how many sheets were installed.

 Having reviewed the contract, we conclude that it was not ambiguous. The relevant provisions of the contract provided:

5.2 The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

. . . .

---

1. When $16 per sheet is multiplied by 1,800 sheets, the result equals the contract price of $28,800.

10.1 The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of TWENTY–EIGHT THOUSAND EIGHT HUNDRED AND 00/100—Dollars ($28,800.00), subject to additions and deductions as provided in the Subcontract Documents.

. . . .

10.3 Unit prices, if any, are as follows: [This provision was left blank.]

. . . .

16.1.3 . . .

There will be no extras above base contract unless a change order is signed in approval prior to the work being completed.

██ The only evidence which we found in our review of the record that supported the appellees' assertions that the agreement was for H & H Drywall to install exactly 1,800 sheets of drywall at $16 per sheet was the appellees' testimony. Harvey testified that he informed the architect that H & H Drywall's price for hanging, taping, and finishing drywall sheets was $16 per sheet. The plans, however, did not require every sheet to be taped and finished. We are not convinced that the architect would have agreed to pay $16 per sheet regardless of whether the sheet was taped and finished. Even Keith testified that generally the cost for hanging drywall was $5 per sheet and that the cost for taping and finishing it was $12.

The architect denied that he told the appellees how much drywall would be required or that he agreed to pay $16 per sheet. The record does not contain any evidence other than the appellees' testimony which would indicate that the architect intended to enter anything but a fixed price agreement. The contract was consistent with and supported the architect's testimony with regard to what his intentions were when he entered into the agreement.

Additionally, H & H Drywall did not obtain a change order before proceeding with work which it believed was over and above what the contract required. The appellees testified that they had requested a change order to get approval for the additional work which H & H Drywall was doing, that witnesses overheard the requests being made for a change order, and that they were told not to worry about a change order as H & H Drywall would be paid for its extra work. The appellees, however, did not present any of the witnesses at the trial to support their testimony that a change order had been requested or that either of them had been told that H & H Drywall would be paid for the extra work despite its failure to obtain a change order.

We conclude that the evidence was not sufficiently clear and convincing to support the trial court's finding that the appellees met their burden of proving mutual mistake. The evidence simply did not support the determination that the architect had made a mistake in forming the contract. Instead, the evidence supported only that the appellees had made a unilateral mistake. It would have been a simple matter for the appellees to write a cost-per-sheet price into the contract under the provision which provided for a unit price rather than to leave that provision blank and assume that the fixed price of $28,800 meant that exactly 1,800 sheets were to be installed at $16 per sheet without taking into account whether or not the sheets were to be taped and finished. It also would have been quite simple for H & H Drywall to comply with the provision in the contract which required it to get a change order before it commenced any extra work. We cannot rescue the appellees from the consequences of their unwisely made agreement, nor can we revise the agreement to reflect their subjective understanding.

Since our decision on this issue is dispositive, we will not address Patel's second issue.

Reversed.