Roy O. MATHIS and Gloria J. Mathis,
Appellants (Plaintiffs),

v.

H. Richard WENDLING and Mary F.
Wendling, husband and wife,
Appellees (Defendants).

No. 97–303.

Supreme Court of Wyoming.

July 28, 1998.

**162**

Eric M. Alden, Wheatland, for Appellants.

Patrick M. Hunter, Casper, for Appellees.

Before LEHMAN, C.J.,* MACY and GOLDEN, JJ., and DONNELL and VOIGT, D.JJ.

DONNELL, District Judge.

Appellants purchased certain real estate from appellees under a contract for deed. A dispute as to the payoff of the purchase price arose several years later as the result of a mathematical error in the payment schedule. After trial, the district court determined that appellants should pay the full amount of the purchase price and interest as stated in the contract, and appellants now challenge that result. We affirm the decision of the district court.

## I. ISSUES

Appellants, Roy O. and Gloria J. Mathis (the Mathises), have stated the following issue for review:

The vendor under a real estate contract for deed made a computational error and specified a payment schedule which did not completely retire the principal and interest term intended by the vendor. Unaware of the computational error, the purchaser executed a contract and made the prescribed payments. After making the final payment, the purchaser demands performance by delivery of the deed. The vendor refuses, demanding additional payments to completely retire the principal and interest amounts. Must the purchaser make the additional payments in order to obtain the property?

Appellees, H. Richard and Mary F. Wendling (the Wendlings), state the issues somewhat differently:

1. Is there sufficient evidence to support the trial court's determination as to the intent of the parties?

2. Did the trial court properly interpret the contract to reflect the intent of the parties?

## II. FACTS

In May 1986, the parties entered into a written agreement for the purchase of a ranch in Platte County, Wyoming. This agreement was the result of several years of sporadic negotiation that finally resulted in a general agreement as to terms at a meeting in the offices of the Wendlings' realtor. The Wendlings' attorney then reduced the agreement to writing. Following several reviews and revisions by the Mathises, the agreement was finalized and signed by the parties.

The written contract was fairly standard in its terms. It provided for a total purchase price of $362,000.00. The contract required that the Mathises provide a down payment of $47,500.00 and assume two mortgages. The Wendlings agreed to finance the remaining balance of $83,809.10, which the Mathises agreed to pay in ten annual installments of $12,399.59, including interest at ten percent per annum, until the balance of the purchase price was paid in full. Finally, the agreement required the Wendlings to provide the Mathises a deed upon payment of the purchase price and accrued interest in full. The amount of the annual payment specified in the contract remained constant throughout the process of review and revision of the

* Chief Justice effective July 1, 1998.

draft contracts. Unbeknownst to the parties, however, the annual payment specified was incorrect. Ten annual payments of $12,-399.59 with interest at ten percent would not, in fact, fully pay the entire principal balance and accrued interest. At the end of ten years, the annual payments paid on the contract would be about $20,000.00 short of the total purchase price. The record is unclear as to whom actually made the computational error, although it appears that either the Wendlings' attorney or realtor made the mistake.

The parties proceeded for the next several years in accordance with the contract terms. Although they were often late, the Mathises made their annual payments of $12,399.59. The Wendlings did not attempt to charge interest on the late payments, although the contract allowed them to do so. In 1992, however, the fly was discovered in the ointment. The Wendlings' attorney wrote a letter to the Mathises advising them of the mathematical error and proposing two solutions. First, that the Mathises continue the annual payments with a balloon payment at the end or, second, that the annual payments simply continue beyond the specified ten years until the balance was paid in full. The Mathises did not reply to this letter, but continued to make the required annual payments. They marked their tenth check "final payment" and demanded the deed be delivered to them. The Wendlings refused, contending the Mathises had not paid the purchase price and interest in full.

The Mathises then filed their action for declaratory relief. Following trial, the district court determined that $19,840.35 remained owing on the principal balance. The district court also determined that the use of the term "ten (10) annual payments" provided only a guideline for amortization of the agreed principal balance and did not modify the total purchase price, the amount financed or the interest rate. The district court also determined that any mistake was mutual and that both parties should bear responsibility for it. Finally, the district court ordered the Mathises to continue making annual payments of $12,399.59 until the remaining principal balance and interest had been paid in full. This appeal followed.

### III. STANDARD OF REVIEW

Here, the district court made express findings of fact and conclusions of law. We have stated that we do not afford the factual findings of a judge the limited review given a jury verdict. *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1176 (Wyo.1997) (*citing Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo. 1993)). While this court presumes that the district court's findings of fact are correct, we may examine all of the properly admissible evidence in the record. *Springer,* 944 P.2d at 1176. Our review does not include reweighing disputed evidence, and we give the judge's opportunity to assess the witnesses' credibility due regard. *Id.* We will not set aside the district court's findings of fact unless the findings are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Frost Const. Co. v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998) (*citing Narans v. Paulsen,* 803 P.2d 358, 360 (Wyo.1990)). Additionally, we review a district court's conclusions of law *de novo. Springer,* 944 P.2d at 1176.

### IV. DISCUSSION

At the heart of this dispute are the interpretation and construction of a written contract, the parties' Agreement for Warranty Deed, which is a matter of law for the court. *Prudential Preferred Properties v. Underwood Ranch Co.,* 873 P.2d 598, 600 (Wyo.1994) (*citing True Oil Co. v. Sinclair Oil Corp.,* 771 P.2d 781, 790 (Wyo.1989)). The well-established rules of contract construction require that our prime focus be on the parties' intent. *Prudential Preferred Properties,* 873 P.2d at 600. This court first looks at whether the contract is clear and unambiguous, and if it is, we confine our review to the four corners of the document to determine the parties' intent. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo.1993). A contract is ambiguous if the agreement is obscure in its meaning because of indefiniteness of expression or because a double mean-

ing is present. *Brockway v. Brockway*, 921 P.2d 1104, 1106 (Wyo.1996) (*quoting Carlson v. Water Unlimited, Inc.*, 822 P.2d 1278, 1281 (Wyo.1991)). In making such determination, this court considers the contract as a whole and reads each provision in light of all the others to find the plain meaning of the words. *Martin v. Farmers Ins. Exchange*, 894 P.2d 618, 620 (Wyo.1995). This court will not consider extrinsic evidence to contradict the plain meaning of an unambiguous contract, and the intent of the parties, as stated in their agreement, must be given effect. *J and J Ventures, Inc.*, 859 P.2d at 1271 (*citing Wyoming Bd. of Certified Public Accountants v. Christensen*, 800 P.2d 853, 856 (Wyo.1990)).

The Mathises argue that the contract is ambiguous because paragraph 2(e) of the Agreement for Warranty Deed contains two phrases in the same sentence that contradict each other. However, they ignore this court's long-standing rules of contract interpretation. The district court did not find the contract ambiguous, but construed the contract as a whole to determine the intent of the parties. The Agreement for Warranty Deed clearly states the total sales price and the manner of payment. The contract states that the Mathises would pay a $47,500.00 down payment, assume two mortgages totaling $230,690.90, and pay the *"unpaid principal balance of $83,809.10, together with interest at the rate of 10% per annum on any unpaid balance * * *."* (Emphasis added.) The provisions also state that the Mathises would pay the latter in ten annual installments of $12,399.59, and neither party recognized at the time of closing that this would not satisfy the unpaid balance in full. Additionally, the accelerated payment clauses provide for the advance payment of the *outstanding principal balance plus accrued interest on the $83,809.10.*

The contract clearly specifies the total purchase price of $362,000.00. It is also apparent from the "whole" contract that in order to fulfill the Agreement for Warranty Deed, the Mathises are required to pay the unpaid principal balance of $83,809.10, and the annually accrued interest at ten percent, in order to satisfy the total purchase price. The

Mathises would have this court construe the contract to require ten annual payments of $12,399.59 without regard to the total remaining unpaid principal balance. To interpret the contract thusly would be playing "fast and loose" with the parties' clear intent. That intent is that the Mathises pay the full purchase price and accrued interest. Although a mathematical error exists within the terms for payment, that error does not necessarily make the contract ambiguous. However, it does mean that a mistake exists.

The district court concluded that "[a]ny mistake concerning the amortization was a mutual mistake, for which both parties bear responsibility." This court has set forth the elements of mutual mistake:

"The essential elements of mutual mistake in a written instrument for which a court of competent jurisdiction may grant appropriate relief are that there was an antecedent agreement which the written instrument undertakes to evidence; that a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence; and that in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake was mutual."

*Schulz v. Miller*, 837 P.2d 71, 74 (Wyo.1992) (*quoting Northern Pac. Ry. Co. v. United States*, 277 F.2d 615, 619 (10th Cir.1960)). In other words, the mistake is "reciprocal and common to both parties with each party being under the same misconception as to the terms of the written instrument." *Patel v. Harless*, 926 P.2d 963, 966 (Wyo.1996) (*citing Shrum v. Zeltwanger*, 559 P.2d 1384, 1386 (Wyo.1977)). Although the general rule is that parol evidence is inadmissible when a contract is unambiguous, we make an exception in the case of mutual mistake. *Patel*, 926 P.2d at 965 (*citing Schulz*, 837 P.2d at 75 and *Cordova v. Gosar*, 719 P.2d 625, 640–41 (Wyo.1986)). If a court finds that a mutual mistake exists, it may then cancel or reform the contract. *Patel*, 926 P.2d at 966. Reformation must reflect the parties' intent and cannot represent only one party's subjective understanding of the intent of the agreement. *Id.*

■ The written agreement in question was the end result of several years of sporadic negotiation. The Wendlings' attorney reduced the agreement to writing and the Mathises reviewed and revised the written agreement several times before the parties finalized and signed it. The Wendlings discovered the mistake in 1992, six years after the parties entered into their written agreement. Despite notification of the error, the Mathises thereafter continued the regular annual payments, tendering their tenth payment as "final payment." The common misconception the parties were clearly working under here, at least until 1992, was that ten annual payments of $12,399.59 would pay the entire remaining balance of the total purchase price together with accrued interest. Obviously, both parties were incorrect.

■ The district court found a mutual mistake and remedied it by ordering the Mathises to continue paying the annual installments beyond the ten-year period until they satisfied the full amount of the purchase price and accrued interest. Although the district court stated that reformation was not needed, its conclusions and actions belie that statement. However, this court has stated that when a mutual mistake is found, a court may reform the contract to "accurately memorialize the antecedent agreement of the parties." *Toland v. Key Bank of Wyoming*, 847 P.2d 549, 554 (Wyo.1993). "Reformation is an equitable remedy which emanates from the maxim that 'equity treats that as done which ought to have been done.'" *Id.* at 553–54 (*quoting* 66 Am.Jur.2d *Reformation of Instruments* § 2 at 528 (1973)). Reformation recognizes that for one reason or another, written contracts do not always accurately reflect the parties' antecedent agreement. *Toland*, 847 P.2d at 554. If the court finds clear and convincing evidence that there was a mutual assent prior to the time a writing was entered, that a written contract memorialized the mutual understanding, and that the written contract, due to a mutual mistake, does not conform to the parties' understanding, then it may reform the written instrument in question. *Id.* (*quoting Gasaway v. Reiter*, 736 P.2d 749, 751 (Wyo.1987)). The record here clearly shows that the dis-

trict court's actions were in conformity with these requirements.

## V. CONCLUSION

We agree with the district court in finding that the Agreement for Warranty Deed is not ambiguous and the parties' intent is set forth within the four corners of the document. The intent of the parties was not to contract for specific annual payments without regard of the total remaining unpaid principal balance. Although the Agreement for Warranty Deed contains a mathematical error, we find that this did not create an ambiguity in the agreement. Rather, this evidences a reciprocal misconception that the specified annual payments would retire the Mathises' debt to the Wendlings. The district court correctly found a mutual mistake and reformed the contract to accurately reflect the intent of the parties. The judgment of the district court is affirmed.