William D. HANSEN, Appellant
(Plaintiff),

v.

LITTLE BEAR INN COMPANY, a Wyoming corporation, and Barbara Boling, in her individual capacity, Appellees (Defendants).

Little Bear Inn Company, a Wyoming corporation, and Barbara Boling, in her individual capacity, Appellants (Defendants),

v.

William D. Hansen, Appellee (Plaintiff).

Nos. 99–186, 99–187.

Supreme Court of Wyoming.

July 18, 2000.

Representing William D. Hansen: Don W. Riske and James R. Salisbury of Riske & Arnold, P.C., Cheyenne, Wyoming. Argument by Mr. Riske.

Representing Little Bear Inn Company and Barbara Boling: Terry W. Mackey and David Evans of Hickey, Mackey, Evans & Walker, Cheyenne, Wyoming. Argument by Mr. Evans.

Before LEHMAN, C.J., THOMAS, MACY,* GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Appellant William D. Hansen contests the district court's denial of his claim for contract rescission for mutual mistake, finding Appellee Richard K. Boling[1] did not breach the parties' contract and an award of costs and attorneys' fees is not warranted. Boling ap-

---

* Retired June 2, 2000.

1. Richard K. Boling died on April 6, 2000. On June 27, 2000, this Court entered an Order Allowing Substitution of Party naming Barbara Boling, personal representative of the estate of Richard K. Boling, as Appellee. However, for purposes of this opinion, we will continue to refer to Richard K. Boling as Appellee.

peals the district court's denial of his counterclaim that Hansen's failure to discharge the mortgage underlying the parties' agreement is actionable.

We affirm.

## ISSUES

Hansen presents the following issues for our consideration in Case No. 99–186:

I. Whether the District Court erred in ruling that Appellant failed to carry his burden of proving mutual mistake of the parties as a basis for his claim of rescission of the Stock Agreement.

II. Whether the District Court erred in denying Appellant's Motion for Summary Judgment on his claim for breach of contract.

III. Whether the District Court erred in holding that there was an implied term in the Stock Agreement, the failure of which effectively excused performance by Appellee Boling.

IV. Whether Appellant is entitled to an award of all costs and attorneys' fees incurred as a result of Appellee's default and breach of contract, as provided for in the Stock Agreement and transaction documents.

On the issue of the counterclaim, Case No. 99–187, Hansen states the issue as:

Whether the proposed tender of payment by Richard Boling warranted release of the mortgage in favor of William Hansen encumbering the real property of Little bear Inn Company.

Appellees Little Bear Inn Company and Richard K. Boling present the following issues in Case No. 186:

I. Did Appellee's inability to be underwritten for life insurance breach the Agreement For Sale of Corporate Stock?

II. Does the Mortgage herein relate to any obligation but the payment of the Promissory Note herein?

III. Was there an assumption by the parties that Appellee would be able to purchase life insurance, and if so, does such an assumption meet the elements of a mutual mistake qualifying the contract for rescission?

IV. Did Appellee's efforts to be underwritten for life insurance breach the implied contractual duty of good faith and fair dealing?

V. Are Appellants entitled to attorney fees and costs?

On the counterclaim, Case No. 99–187, Boling and Little Bear Inn Company ask:

I. Does a proper tender of payment of amounts due under a mortgage meet the requirements of Wyoming Stat. Ann. 34–1–132?

## FACTS

. In 1994, William D. Hansen and Richard K. Boling purchased stock of the Little Bear Inn Company (LBI) from the McIntyres. The purchase was secured with a 15–year note, personally guaranteed by Hansen and Boling. The stock was assigned to Hansen and Boling and held as collateral by the bank for the McIntyres. Hansen became the majority stockholder, owning 62% of the stock.

On February 27, 1998, the parties executed an Agreement for Sale of Corporate Stock, and Boling purchased Hansen's stock interest for $205,000, secured by a promissory note from LBI and Boling in the amount of the purchase price and a mortgage on the property. Paragraph No. 6 of the Agreement states the following:

6. LIFE INSURANCE. The Purchaser shall, within ten (10) days following closing, purchase and shall thereafter for the term of the Promissory Note maintain term life insurance upon his life in an amount of not less than Two Hundred Five Thousand Dollars ($205,000.00). Said insurance shall name Seller as the beneficiary of such policy and coverage amount. A copy of such insurance policy and all renewals thereof shall promptly be delivered to the Seller. Failure to comply with this requirement by Purchaser shall constitute a material breach of this Agreement. Said insurance shall be "declining balance" insurance wherein Seller receives only the amount necessary to pay the principal balance hereunder with the remaining pro-

ceeds going to a beneficiary designated by Purchaser. Purchaser is relieved from this obligation if he cannot locate a company willing to underwrite said insurance for less than $150.00 per month for the initial premium. In the event that Purchaser is unable to locate a company which offers such insurance for $150.00 or less per month premium, he shall notify Seller of such fact and the amount of the premium which is required and Seller may elect, in writing, to agree to pay any difference between the required premium and $150.00 per month. Purchaser agrees to secure such insurance and keep it current as long as Seller pays any additional premium.

Two days following the agreement to purchase Hansen's stock, Boling met with an insurance agent, completed an application for a life insurance policy and executed a collateral assignment to Hansen on approval of his application. Based on blood tests indicating high cholesterol and liver enzymes, Boling was informed he was uninsurable. He then sought medical treatment and was prescribed medication and a diet regimen. Subsequent blood tests showed decreased levels, but not enough to secure a policy. A pool of 130 insurance companies declined coverage, as did five substandard brokerage companies. A second insurance agent solicited policies from high-risk brokerage companies without success. Boling informed both agents they should consider polices above the Agreement's $150 monthly premium limit, if need be. Boling pursued the purchase of life insurance for eight months, receiving the last insurance application rejection on November 3, 1998.

On August 18, 1998, Hansen filed a Complaint for Judgment alleging a material breach of the Stock Agreement by Boling. On February 25, 1999, the district court denied Hansen's motion for summary judgment, finding a genuine issue of material fact regarding whether Boling used reasonable efforts to procure a life insurance policy and "what result should obtain if Boling is uninsurable."

On March 5, 1999, Boling notified Hansen he was ready to pay off the entire principal and interest due on the mortgage, evidenced by a letter from a bank indicating funds would be available immediately, provided a release of mortgage was given by Hansen. Hansen refused to release the mortgage.

On March 12, 1999, Hansen filed an Amended Complaint alleging breach of contract, rescission of contract through mutual mistake of fact, breach of implied covenant of good faith and fair dealing, and costs of collection and attorney's fees. Boling counterclaimed, alleging Boling and LBI offered to pay the promissory note in full, based on a commitment from the bank to loan the money upon the release of Hansen's mortgage, and that Hansen refused the offer, in violation of Wyo. Stat. Ann. § 34–1–132.

At trial on March 24, 1999, Boling testified he had secured a written commitment of funds from a bank to buy out Hansen by November 6, 1998, and attempted to have Hansen removed from his personal guarantee with the McIntyres, though the McIntyres refused. Hansen and Boling both testified that on the date they entered into the agreement for purchase of Hansen's stock, neither had knowledge of any sort that would lead them to believe Boling would not be able to qualify for insurance coverage. When Hansen was asked why he agreed to the provision in Paragraph 6, which states: "Purchaser is relieved from this obligation if he cannot locate a company willing to underwrite said insurance for less than $150.00 per month for the initial premium," Hansen responded he was concerned about the cost to Boling, although he did not think the insurance would be so expensive that Boling could not afford it.

Concluding Boling had used reasonable efforts to secure a life insurance policy, the district court denied Hansen's complaint, finding no breach of contract or implied covenant of good faith and fair dealing. The trial court also found an award of attorney's fees and costs was unwarranted and that Hansen had failed to carry his burden for rescission of the contract based on mutual mistake. In denying Boling's counterclaim, the district court concluded Wyo. Stat. Ann. § 34–1–132 was designed to provide a remedy for mortgagors who have satisfied all conditions of the mortgage, but face a recalcitrant mort-

gagee. The trial court determined Boling did not render full performance, but only offered to do so, making the statute inapplicable. The district court concluded the parties were left in the same position as before the litigation, with the bargain still in force, except for Boling's obligation to secure life insurance, which had been fulfilled.

## DISCUSSION

*Standard of Review*

■ At issue is the construction and resulting interpretation of Paragraph No. 6 of the parties' written Agreement for Sale of Corporate Stock, which this Court reviews as a matter of law. *Mathis v. Wendling*, 962 P.2d 160, 163 (Wyo.1998); *Sanchez v. Life Care Centers of America*, 855 P.2d 1256, 1257 (Wyo.1993). In so doing, we review, *de novo*, the district court's conclusions of law. *Saulcy Land Co. v. Jones*, 983 P.2d 1200, 1203 (Wyo.1999).

■ As we interpret the Agreement, we are mindful that our primary focus is the intent of the parties. *Wolter v. Equitable Resources Energy Co.*, 979 P.2d 948, 951 (Wyo.1999) (citing *Woods Petroleum Corporation v. Hummel*, 784 P.2d 242, 243 (Wyo. 1989)). If the document is clear and unambiguous, we review the four corners of the Agreement to determine the parties' intent. *Sierra Trading Post, Inc. v. Hinson*, 996 P.2d 1144, 1148 (Wyo.2000). Ambiguity is found if indefiniteness of expression or double meaning obscure the intent of the parties, though disagreement between the parties as to the Agreement's meaning does not give rise to an ambiguity. *Wolter*, 979 P.2d at 951 (citing *Svalina v. Split Rock Land and Cattle Co.*, 816 P.2d 878, 881 (Wyo.1991)); *Mathis*, 962 P.2d at 163–64.

*Mutual Mistake*

■ When there is mutual mistake, there is no mutual assent of the parties. *Shrum v. Zeltwanger*, 559 P.2d 1384, 1387 (Wyo.1977). "A mutual mistake is one which is reciprocal and common to both parties with each party being under the same misconception as to the terms of the written instrument." *Patel v. Harless*, 926 P.2d 963,

966 (Wyo.1996) (citing *Shrum*, 559 P.2d at 1386). We have said:

When a mistake in a writing is claimed, the burden rests on the party claiming the mistake to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement entered into between the parties; that the mistake was mutual; and that it did not occur by or result from negligence of the party claiming it.

*Patel*, 926 P.2d at 966 (quoting *Schulz v. Miller*, 837 P.2d 71, 76 (Wyo.1992)); *Pfister v. Brown*, 498 P.2d 1243, 1245 (Wyo.1972).

■ Upon finding a mutual mistake exists, the Court may reform or cancel the contract. *Mathis*, 962 P.2d at 164 (citing *Patel*, 926 P.2d at 966). This Court has determined the elements of a mutual mistake:

The essential elements of mutual mistake in a written instrument for which a court of competent jurisdiction may grant appropriate relief are that there was an antecedent agreement which the written instrument undertakes to evidence; that a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence; and that in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake was mutual.

*Mathis*, 962 P.2d at 164 (citing *Schulz*, 837 P.2d at 74).

The Restatement (Second) of Contracts § 151 (1981) defines mistake as "[a] belief [that] is not in accord with the facts." Comment *a* to this section makes clear:

The word "mistake" is not used here, as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief. This usage is avoided here for the sake of clarity and consistency. Furthermore, the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a "mistake" as that word is defined here.

Restatement (Second) of Contracts § 151 cmt. a (1981).

■ Although the parties' Agreement addressed their concern over the eventual cost of an insurance policy for Boling, they failed to consider that Boling would not be able to obtain insurance under any condition at any price. Neither party believed, before entering into the Agreement, Boling would be uninsurable prior to entering into the Agreement, and Hansen did not investigate this possibility before the Agreement was executed. The parties have simply failed in the Agreement to provide for this eventuality. We find, as did the district court, the failure to adequately predict this result is not a mistake of the parties, but merely poor prognostication. Mutual mistake of fact does not exist.

*Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing*

■ The district court concluded that the omission of an essential term addressing the uninsurability of Boling rendered the insurance clause of Paragraph No. 6 ambiguous, thus permitting the court to infer a term which is reasonable under the circumstances. Determining that a reasonable term can be inferred from the implied covenant of good faith and fair dealing, the district court resolved that Boling was under a duty to use reasonable efforts to secure insurance and did so. Thus, no breach of contract or covenant of good faith and fair dealing was found.

> When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.

Restatement (Second) of Contracts § 204 (1981).

■ "Every contract is deemed to contain an implied term of good faith and fair dealing." *Roussalis v. Wyoming Medical Center*, No. 96–219, slip op. at 39, 2000 WL 424323 (April 20, 2000); *see Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo.1994); *McIlravy v. Kerr–McGee*, 119 F.3d 876, 882 (10th Cir.1997). We have defined good faith to mean:

> [F]aithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness.

*Wilder*, 868 P.2d at 220 (citing Restatement (Second) of Contracts § 205 at 100, cmt. a (1981)); *McIlravy*, 119 F.3d at 882.

■ Common sense and good faith are leading precepts of contract construction, and we employ these measures in our effort to construe the parties' agreement. *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo.1998) (citing *Moncrief v. Louisiana Land & Exploration Co.*, 861 P.2d 516, 524 (Wyo.1993)); *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991).

■ Boling spent eight months in the pursuit of life insurance with two different insurance agents, shopping numerous insurance companies, as well as submitting to life style changes and medication to improve his insurability. Absent a clause in the Agreement to provide for his uninsurablility, we conclude, as did the district court, Boling was required to employ reasonable efforts to procure life insurance. We agree Boling was faithful and reasonable in his efforts, and no breach of the implied covenant of good faith and fair dealing occurred.

*Costs and Attorney's Fees*

■ Having determined no mutual mistake exists, or breach of contract or implied covenant of good faith and fair dealing, an award of costs and attorney's fees is unwarranted.

*Summary Judgment*

■ We dispose of Hansen's appeal of the denial of his motion for summary judgment by noting such denial is not a final order and, therefore, not appealable. *Wolter*, 979 P.2d at 953; *State Farm Mutual Automobile Insurance Company v. Shrader*, 882 P.2d 813, 820 (Wyo.1994); *Kimbley v. City of Green River*, 663 P.2d 871, 888 (Wyo. 1983).

*Boling's Counterclaim*

Boling claims that Hansen's refusal to discharge the mortgage following his presentation of a letter from the bank guaranteeing payment on the note is, by statute, actionable. Wyo. Stat. Ann. § 34–1–132(a) (Lexis 1999) states the following:

> (a) A mortgagee shall, within thirty (30) days after having received by certified or registered mail a request in writing for the discharge or release of a mortgage, execute and acknowledge a certificate or deed of discharge or release of the mortgage **if there has been full performance of the condition of the mortgage** and if there is no other written agreement between the mortgagee and mortgagor encumbering the property subject to the mortgage.

(emphasis added). Clearly, this provision requires the note to be paid in full before a mortgagee must release the mortgage.

On March 5, 1999, in a letter to Hansen, Boling stated he and LBI "stand ready to pay off the entire principal and interest due" on the mortgage. Attached to the letter is a letter from the bank to Boling, stating the bank "can close the loan to Little Bear Inn Inc. and the funds would be available immediately, as long as there is a release of mortgage from William D. Hansen." We find, as did the district court, these letters provided by Boling evidence merely an offer to render full performance. Boling has not satisfied the note and therefore cannot claim that Hansen's failure to discharge the mortgage in this circumstance is actionable under Wyo. Stat. Ann. § 34–1–132.

### CONCLUSION

We affirm the district court's finding that no mutual mistake of fact exists. We hold that Boling did not default on the contract, nor did he breach the implied covenant of good faith and fair dealing, and, therefore, the claim for costs and attorney's fees are not warranted. Denial of Hansen's motion for summary judgment is not appealable. Hansen's failure to discharge the note is not actionable under Wyo. Stat. Ann. § 34–1–132 as Boling has not rendered full performance on the note; he only offered to. The parties are returned to their pre-litigation positions, and the Agreement continues to be in full force and effect.