**STATE of Alaska, Petitioner,**

v.

**J.R.N., Respondent.**

**No. S–4528.**

Supreme Court of Alaska.

Oct. 28, 1993.

Rehearing Denied Nov. 17, 1993.

John A. Scukanec, Cynthia M. Hora, Asst. Attys. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for petitioner.

Suzanne Weller, Asst. Public Defender, John B. Salemi, Public Defender, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

When police arrest and detain a juvenile, Alaska Delinquency Rule 7(b) [1] and AS 47.-10.140 [2] require that they "immediately" notify the juvenile's parents. Police arrested sixteen-year-old J.R.N. for murder. He confessed and led the police to critical evidence before the police notified his father. The court of appeals ordered that J.R.N.'s confession and the evidence be suppressed based on the court's conclusion that the police violated DR 7(b). We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In early October 1989, Duane Samuels was shot three times and killed; his car was stolen. On October 6, 1989, at approximately 8:45 a.m., the police found J.R.N. riding in the stolen vehicle and arrested him. They brought him to an Anchorage police station.

Shortly after J.R.N.'s arrest, Anchorage Police Sergeant Michael Grimes contacted the District Attorney's Office to determine the proper procedure for questioning juveniles. An assistant district attorney advised Grimes that juveniles must be asked if they want a parent notified or present before questioning, but that in the absence of a request by the juvenile the parents need not be notified before questioning.

Before questioning J.R.N., Sgt. Grimes asked J.R.N. if he wanted his parents notified. J.R.N. said that he did not. Sgt. Grimes also read J.R.N. his *Miranda* [3] rights, which J.R.N. acknowledged. He agreed to talk to the police. At approximately 1:00 p.m. the police interviewed J.R.N. The police videotaped this interview. During the interview, J.R.N. confessed to killing Samuels and stealing the automobile.

After the interview, J.R.N. showed the police the location of the murder weapon and other incriminating evidence. At 4:00 p.m. the police notified J.R.N.'s father that they had arrested J.R.N. The father had been available throughout the day and asserted that he would have come to the police station earlier if he had been notified of J.R.N.'s arrest.

On October 8, 1989, the State petitioned to prosecute J.R.N. as an adult, charging him with first-degree murder, robbery, burglary and theft. Prior to the hearing, J.R.N. moved to suppress the confession and the evidence obtained as a result of the confession. The superior court granted the State's petition and denied J.R.N.'s motion. J.R.N. appealed. On appeal, the court of appeals reversed the superior court, concluding that the police had violated DR 7(b) by not immediately notifying J.R.N.'s parents as soon as he was arrested and taken to the police station. *J.R.N. v. State*, 809 P.2d 416 (Alaska App.1991). It further

---

1. When J.R.N. was arrested, Delinquency Rule 7(b) provided:

   If a juvenile is arrested, the juvenile must be taken immediately to a detention facility or placement facility designated by the Department [of Health and Social Services] or released pursuant to paragraph (c) of this rule. The arresting officer shall immediately notify the parents, guardian and Department of the arrest and detention or placement, and shall make and retain a record of the notification. If the juvenile is arrested under subparagraph (a)(3) of this rule, prompt notification must also be given to the Department of Law.

2. AS 47.10.140(a) and (b) provide:

   (a) A peace officer may arrest a minor who violates a law or ordinance in the officer's presence, or whom the officer reasonably believes is a fugitive from justice. A peace officer may continue a lawful arrest made by a citizen. The officer may have the minor detained in a juvenile detention facility if in the officer's opinion it is necessary to do so to protect the minor or the community.
   (b) A peace officer who has a minor detained under (a) of this section shall immediately, and in no event more than 12 hours later, notify the court, the minor's parents or guardian, and the department of the officer's action. The department may file with the court a petition alleging delinquency before the detention hearing.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

concluded that exclusion of the confession and the resulting evidence was the appropriate remedy for the violation. The State filed a petition for hearing from this decision.

## DISCUSSION

█ The State contends that DR 7(b) and AS 47.10.140(b) are inconsistent, and that the statute controls. The State argues that the statute implies a more relaxed definition of "immediately" than the rule, because the term "immediately" is modified by the phrase "and in no event more than 12 hours later: . . ." in the statute, but not in the rule. The State also argues that this court went beyond its constitutional power to make rules of "practice and procedure" "in all courts"[4] in promulgating DR 7 because this rule governs conduct by the police which is not in-court practice or procedure.

While the State's perceived inconsistency is plausible, the statute and rule can also be reasonably reconciled. We interpret the term "immediately" to mean the same thing in both the rule and the statute. In our view the language "in no event more than 12 hours later" in the statute is not a modification of "immediately," but merely sets an outside time limit for parental noti-

fication. Since the rule and the statute have the same meaning, the fact that the rule may be *ultra vires* would not be a basis for overturning the court of appeals' decision, for the decision would be equally supported by the statute.[5]

The State also contends that the court of appeals' decision is inconsistent with our decision in *Quick v. State*, 599 P.2d 712 (Alaska 1979). We agree.

█ It is not disputed that the police asked J.R.N. whether he wanted his parents notified before questioning began. He answered that he did not want them notified. The dispositive issue in this case is whether J.R.N. waived his right to have his parents notified.[6] Underlying this issue are two questions. The first is whether a juvenile may waive his or her right to parental notification. If the right may be waived, the second question is whether J.R.N. effectively waived his right to have his parents notified under the circumstances of this case.

█ We hold that a juvenile may waive his or her right to parental notification. The waiver must be a knowing and voluntary one. Whether J.R.N.'s waiver of his right was knowing and voluntary must be

4. Art. IV § 15 of the Alaska Constitution provides:

> The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

5. The court's power to make rules extends beyond the confines of in-court practice and procedure in some cases. We have expressed the view that the court has the power to make rules which interpret common-law, statutory, or constitutional rights as an adjunct of the judicial power grant contained in article IV, section 1 of the Alaska Constitution. In the note to the rule establishing guidelines for child support, Civil Rule 90.3, we authorized the following statement:

> This rule is adopted under the supreme court's interpretive authority pursuant to Article IV, Section 1 of the Alaska Constitution. Thus, it may be superseded by legislation even if the legislation does not meet the procedural

requirements for changing rules promulgated under Article IV, Section 15.

Interpretive rules which concern a common-law or statutory right do not occupy the same place in the legal hierarchy as rules of practice and procedure; such interpretive rules may not be inconsistent with statutes and they may be repealed or modified by statute without the two-thirds legislative majority required for the change of a rule of practice and procedure under article IV, section 15. In our view DR 7(b) is a rule of interpretation.

6. The right of parental notification runs both to the arrested juvenile and to the arrested juvenile's parents. In this case the juvenile is asserting the right. One accused of crime may assert a violation of another's rights as a basis for suppression of evidence only where the violation involves deliberate or shocking police misconduct. *Waring v. State*, 670 P.2d 357 (Alaska 1983). Since these conditions do not exist based on the record before us, J.R.N. has no standing to raise a violation of his parents' rights. The focus in this case must therefore be on J.R.N.'s right to have his parents notified of his arrest.

assessed by the totality of the circumstances as they existed when he stated that he did not want his parents notified. This inquiry should be conducted by the trial court on remand.[7]

These conclusions are governed by our decision in *Quick*. In *Quick*, police interrogated a seventeen-year-old juvenile at a police station in connection with a murder investigation. When he made an incriminating statement the police considered him to be in custody and advised him of his *Miranda* rights. 599 P.2d at 716. He stated that he wished to waive these rights and, after further questioning, he confessed to participating in the murder. *Id.* The juvenile argued that his confession should be suppressed because his *Miranda* waiver was ineffective "as he was not given an opportunity to consult with a neutral adult or guardian before waiving his rights." *Id.* at 718. On appeal, we affirmed, rejecting a rule of *per se* exclusion of a juvenile's confession absent a protective adult's presence. *Id.* at 719–20.

We defined the issue in *Quick* as "whether and to what extent a juvenile can waive *Miranda* rights without the guidance of an adult...." *Id.* at 718. We noted that while some states had followed a rule of *per se* prohibition on *Miranda* waivers unless a fully informed adult is present, other states had adopted a " 'totality of the circumstances' test in which the age of the defendant is an important but not decisive factor." *Id.* at 719. We adopted the totality of the circumstances approach, stating:

> The mere fact that a person is under the age of majority does not automatically render him incapable of making a knowing and voluntary waiver. The surrounding circumstances must be considered in each case to determine whether a particular juvenile had sufficient knowledge and maturity to make a reasoned decision. Among the factors to be con-

sidered are age, intelligence, length of the questioning, education, prior experience with law enforcement officers, mental state at the time of the waiver, and whether there has been any prior opportunity to consult with a parent, guardian, or attorney.

*Id.* We also noted:

> It is unquestionably a better practice to see to it that a juvenile consults with an adult before he waives his *Miranda* rights, but, at least in those cases where it has not been requested, we decline to adopt a rule requiring such consultation.

*Id.* at 719–720.

Since juveniles under arrest can waive their constitutional privilege against self-incrimination and their constitutional right to counsel during interrogation, it logically follows that they can also waive their statutory right to have their parents immediately notified. The constitutional rights concerning self-incrimination and the right to counsel are legally of a higher order than the statutory right of parental notification. It would be inconsistent to hold that a juvenile may waive these constitutional rights but may not waive the additional statutory right.

## CONCLUSION

Juveniles are not *per se* incapable of waiving their right to have their parents immediately notified of their arrest and detention. Whether J.R.N.'s statement that he did not want his parents present was a knowing and voluntary waiver of his right remains for decision. On remand, the trial court should make such a determination in light of all the circumstances which existed when he made the statement. The decision of the court of appeals is REVERSED and this case is REMANDED to the superior court. We retain jurisdiction.

---

**7.** We retain jurisdiction of this case pending the trial court's waiver determination. If the trial court decides that there was no waiver we will proceed to determine whether the violation of J.R.N.'s right of parental notification warrants the exclusionary remedy required by the court of appeals. If the trial court decides that there was a waiver we will remand this case for further proceedings. Such proceedings, of course, may include the right to seek review of the superior court's waiver decision.