William **SPRINGER**, Appellant
(Plaintiff),

v.

**BLUE CROSS AND BLUE SHIELD OF WYOMING, a Wyoming corporation,**
Appellee (Defendant).

No. 96–129.

Supreme Court of Wyoming.

Sept. 23, 1997.

Donald J. Sullivan (argued) and Bert T. Ahlstrom, Jr., Cheyenne, for appellant.

John B. "Jack" Speight, Brent R. Kunz (argued) and Dominique D.Y. Cone, Hathaway, Speight & Kunz, Cheyenne, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

William Springer (Springer) filed this wrongful termination action against his former employer, Blue Cross and Blue Shield of Wyoming (Blue Cross), claiming breach of employment contract, breach of the implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress. After a bench trial, the district court found in favor of Blue Cross on all claims and entered an Order of Dismissal with Prejudice. In this appeal, Springer challenges the district court findings regarding breach of contract and breach of the implied covenant of good faith and fair dealing.

We affirm.

Appellant Springer presents the following issues for our consideration:

1. Whether the trial court erred in holding that the Employment Handbook, either alone or in combination with the Disciplinary Rules, did not constitute an enforceable contract of employment.

2. Whether the trial court erred in holding that the employer's failure to follow its own internal Disciplinary Rules did not constitute a breach of the employment contract.

3. Whether the trial court erred in holding that the manipulation of the employee's duties for the purpose of creating an excuse to fire him did not violate the inherent contractual covenant of good faith and fair dealing.

4. Whether the trial court erred in holding that the employer's claim of a subjective "loss of confidence" constituted good cause for termination of the employment.

Appellee, Blue Cross and Blue Shield of Wyoming, states the issues as:

A. Whether the trial court erred in concluding that Blue Cross and Blue Shield of Wyoming had cause to terminate William Springer's employment.

B. Whether the trial court erred in concluding that Blue Cross and Blue Shield of Wyoming's progressive disciplinary provisions were not mandatory and did not apply to Mr. Springer.

C. Whether the trial court erred in concluding that Blue Cross and Blue Shield of Wyoming did not have a special relationship with Mr. Springer so that the tort of breach of the covenant of good faith and fair dealing would be actionable.

### FACTS

Blue Cross hired Springer as a staff attorney on September 15, 1986. As staff attorney, his primary responsibilities included coordination of benefits, subrogation and refunds oversight. In December 1990, Springer was placed on active duty in the Air Force because of Desert Storm. Upon his return to work on April 29, 1991, he was placed in the position of Director of Claims and Staff Assistant to the Senior Director of Benefits Administration. On August 1, 1993, Springer was reassigned to the position of staff attorney. Blue Cross terminated Springer's employment on January 3, 1994, giving him three months salary plus pay for his accrued vacation to that date.

In July 1995, Springer filed a complaint against Blue Cross seeking compensatory and punitive damages. He claimed that a contractual relationship existed between him and Blue Cross by virtue of representations made in the employee handbook and company policies and that Blue Cross breached the contract. Springer also claimed breach of the implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress.

The district court held a three-day bench trial in late 1995. During the trial, the court heard testimony from Springer, as well as several members of the Blue Cross senior management team, including Charles Chapman, president, and Karen Dobson, vice president. Springer reported directly to either Chapman or Dobson during his entire tenure at Blue Cross. The court received into evidence numerous exhibits from both parties. The documentary evidence included several memos from Chapman and Dobson to Springer during the course of his employment indicating management concerns with Springer's performance and the need for improvement. The exhibits reveal that management had spoken with Springer on more than one occasion about his absenteeism and had discussed with him revisions to his work by outside counsel.

The district court entered a Decision Letter and Findings of Fact and Conclusions of Law in favor of Blue Cross. The court did not decide the question, but assumed for purposes of its decision that an implied-in-fact contract existed between the parties by virtue of the handbook. The court determined that Blue Cross had good cause to terminate Springer and that the progressive discipline procedure outlined in the employee handbook was not mandatory. As a result, the court concluded that Blue Cross did not breach the employment contract. The court also found that Springer did not show the existence of a special relationship necessary to give rise to an action for breach of the covenant of good faith and fair dealing. Springer's claims for intentional and negligent infliction of emotional distress failed as he did not establish the elements of those torts. Because he did not prevail on the tort claims, the court found Springer had no claim for punitive damages. As indicated in the statement of issues, Springer seeks our review only of the district court's findings relating to the breach of contract and breach of the covenant of good faith and fair dealing claims.

### STANDARD OF REVIEW

The trial court made express findings of fact and conclusions of law. The

factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* We review a district court's conclusions of law *de novo* on appeal. *Id.*

## DISCUSSION

### Breach of Contract

Ordinarily when an employee claims breach of an implied-in-fact contract based on provisions in an employee handbook, we begin our analysis by determining whether those provisions altered the presumption of at-will employment. However, in this case the district court, without deciding the matter, started by assuming an employment contract was in place between Springer and Blue Cross by virtue of the handbook. The court then determined that, even assuming an implied-in-fact contract existed, Blue Cross did not commit a breach.

Several versions of the Blue Cross employee handbook were introduced into evidence. In its decision letter, the district court pointed out several unresolved factual issues regarding later versions of the handbook—for example, the effect of disclaimers and Springer's signed acknowledgments of receipt, as well as whether there was consideration for changes to the handbook and whether consideration was in fact necessary. Because these questions were left unanswered, we must assume the district court based its decision on its interpretation of the July 1982 handbook given to Springer when he was hired.

■ We start, then, from the premise that the terms of the 1982 employee hand-book constituted an implied-in-fact contract. Deciding whether a breach of contract has occurred involves interpreting the contract. Whether a contract is ambiguous is a question of law, as is interpretation of an unambiguous contract. *Garcia v. Uniwyo Federal Credit Union*, 920 P.2d 642, 645 (Wyo.1996). When the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact. *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1257 (Wyo. 1993). Springer claims that Blue Cross breached the contract in two respects: 1) Blue Cross did not have good cause to terminate his employment, and 2) Blue Cross did not follow its disciplinary procedures prior to terminating his employment. We address each of those arguments in turn.

### A. Discharge for cause

■ The district court concluded Blue Cross had cause to terminate Springer's employment. Under the heading "Terminations," and the subheading "Involuntary," the employee handbook contains a list of "[s]ome of the reasons, but not all of the reasons, for termination." First on that list is unsatisfactory work performance. We find sufficient evidence in the record, reiterated in the district court's findings, to establish that Springer's work performance was unsatisfactory. Springer's termination letter stated that he was being fired because "management ha[d] lost faith and confidence in [his] judgment and resultant work product." The trial testimony and exhibits revealed several instances during the course of his employment where Springer had been informed of deficiencies in his performance and of the need for improvement. The district court did not err in determining that Blue Cross had cause to terminate Springer.

### B. Progressive discipline

■ The district court's findings of fact with regard to Blue Cross' progressive discipline policy are problematic because they quote language from the employee handbook dated November 1993 rather than the hand-

book in effect when Springer was hired. In addition, the court concluded that the progressive discipline policy only applies where an employee has "a defined area in need of quantifiable improvement." In examining the relevant provisions of the July 1982 handbook and the corporate procedure regarding progressive discipline, we find no language to support the district court's interpretation. The employee handbook provides:

Employees discharged for cause will, in all cases, be counseled and forewarned prior to discharge and written documentation prepared and communicated to the affected employee, in accordance with our Progressive Discipline Policy.

Under the heading "Disciplinary Action," the handbook provides, in relevant part:

When working as a team, we are usually able to accomplish both company and individual goals. Some reasons for not accomplishing our mutual goals might be absenteeism, tardiness, failure to follow instructions or poor work performance. When this happens, counseling becomes necessary. When counseling fails, then disciplinary action is taken.

The handbook next outlines the steps of progressive discipline, which include two oral warnings, a written warning and, finally, demotion or termination. The handbook then states:

Depending on the seriousness of the problem or in cases of chronic offenders, individual steps of the disciplinary procedure may be bypassed resulting in suspension or immediate termination.

Blue Cross also had in place Corporate Procedure 415 entitled "Progressive Discipline." The record reveals that corporate procedures are not disseminated to all employees, but Springer, as a supervisory employee, had a copy of the Progressive Discipline procedure at his disposal. The procedure provides "[i]n most, but not all cases, an employee will not be terminated without first going through the following stages referred to as progressive discipline." The procedure describes the steps of progressive discipline, which consist of up to two verbal warnings, up to two written warnings and, ultimately, suspension or termination. Under the heading "Suspension/Termination," the following language appears: "Depending upon the seriousness of the problem, immediate termination may be necessary without going through the various stages of progressive discipline."

The handbook language unambiguously requires that, in all cases where discharge is for cause, the Progressive Discipline Policy must be followed. However, both the handbook summary of progressive discipline and the corporate procedure itself contain an express exception allowing immediate termination for serious problems without going through the progressive discipline steps. The record contains ample evidence that the problems Blue Cross experienced with Springer's work performance were serious and chronic. The district court, in its decision letter, summarized the evidence in this way:

The evidence, especially but not exclusively that of Mr. Chapman, is that he and others of the "management team" for a variety of reasons and over an extended period of time concluded on the basis of their observations and experience that plaintiff's job performance was unacceptable, that work product was poor and often times had to be redone, that it exhibited a lack of concentration and follow-through, that his judgment was suspect and his advice unreliable such that they lost all trust and confidence in him as a legal advisor and as one who was to perform a variety of legally oriented tasks. There was nothing unreasonable about their conclusions or implausible about their testimony concerning the bases for those conclusions.

The district court had the opportunity to assess the credibility of the witnesses and weigh the evidence and found nothing to discredit the testimony presented on behalf of Blue Cross. Therefore, although the district court erroneously interpreted the progressive discipline procedure as optional, the findings support the court's ultimate conclusion that there was no breach of contract with respect to progressive discipline, and we affirm.

### Implied Covenant of Good Faith and Fair Dealing

Springer contends that Blue Cross breached the implied covenant of good faith and fair dealing. Wyoming recognizes a limited tort claim for breach of an implied covenant of good faith and fair dealing in employment contracts. *Loghry v. Unicover Corp.*, 927 P.2d 706, 712 (Wyo.1996). Only in those rare and exceptional cases in which a special relationship of trust and reliance exists between the employer and employee is a duty created which can give rise to tort liability. *Id.* A special relationship sufficient to support a cause of action can be found by the existence of separate consideration, rights created by common law or statute, or rights accruing with longevity of service. *Id.*

Springer's argument focuses on the "bad faith" aspect of his tort claim—he contends that the manner in which Blue Cross terminated his employment plainly constituted bad faith, resulting in breach of the covenant of good faith and fair dealing. Springer failed, however, to present any evidence of a special relationship between him and Blue Cross sufficient to give rise to a duty enforceable in tort. Springer did allege in his complaint that his employment relationship with Blue Cross constituted a special relationship of trust, but that is not enough. Our case law makes clear that the special relationship necessary to permit recovery is not established merely by virtue of the employer-employee relationship. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 221 (Wyo. 1994); *Drake v. Cheyenne Newspapers, Inc.*,

891 P.2d 80, 82 (Wyo.1995). Springer did not claim the existence of separate consideration or rights created by common law, statute, or length of service on which a special relationship of trust and reliance could be based. Without a special relationship, no duty exists on the part of Blue Cross. Without a duty, there can be no breach. The district court properly denied Springer's tort claim for breach of the covenant of good faith and fair dealing.

### CONCLUSION

In sum, we uphold the district court's determination that, assuming the existence of an implied employment contract by virtue of the employee handbook, Blue Cross did not breach the terms of the contract. Blue Cross had cause to terminate Springer's employment, and the progressive discipline policy allowed for immediate termination for serious problems without going through the steps of the disciplinary procedure. Additionally, Springer did not establish a special relationship of trust and reliance between him and Blue Cross which would support his tort claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the district court's Order of Dismissal with Prejudice is affirmed.