# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 70

### APRIL TERM, A.D. 2013

### June 5, 2013

KAREN M. OLIVER, d/b/a CRAZY TONY'S RESTAURANT,

Appellant
(Defendant),

v.

No. S-12-0161

KEVIN M. QUYNN and NIKKI L. QUYNN, husband and wife,

Appellees
(Plaintiffs).

*Appeal from the District Court of Platte County*
*The Honorable John C. Brooks, Judge*

*Representing Appellant:*
    *Eric E. Jones, Eric E. Jones, PC, Wheatland, Wyoming.*

*Representing Appellees:*
    *Keith J. Dodson and Brian J. Marvel, Williams, Porter, Day and Neville, P.C., Casper, Wyoming. Argument by Mr. Marvel.*

*Before KITE, C.J., HILL, BURKE, DAVIS, JJ., and GOLDEN, J., Retired.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]     This case stems from a dispute about a Party Wall Agreement between Appellant, Karen Oliver,[1] and Appellees, Nikki and Kevin Quynn.[2]  The Quynns filed suit seeking a declaration that the Agreement was unenforceable.  On summary judgment, the district court ruled that the Agreement's provision prohibiting the Quynns from selling alcohol was void and unenforceable.  Ms. Oliver challenges that decision in this appeal.  We will reverse and remand for entry of summary judgment in favor of Ms. Oliver.

## *ISSUES*

[¶2]     Ms. Oliver presents the following issues for our consideration:

> 1.     Whether the terms of the agreement in dispute are equitable servitudes binding on the real property and parties; and
>
> 2.     Whether the prohibition of the sale of alcoholic beverages is enforceable.

The Quynns present the same issues for our consideration, but organize Ms. Oliver's issues into four more focused questions:

> 1.     Whether the district court properly held the covenant not to compete restraining the Quynns' sale of alcohol is unenforceable due to unreasonable duration;
>
> 2.     Whether the district court properly held the covenant not to compete restraining the Quynns' sale of alcohol is unenforceable because Ms. Oliver failed to prove it bears a reasonable, fair, and necessary relation to the business interests Ms. Oliver seeks to protect;
>
> 3.     Whether the district court properly held the covenant not to compete preventing the Quynns' sale of alcohol is

---

[1] At sometime during this litigation, Ms. Oliver married Wayne Geuke and changed her name to Karen Geuke.  We will follow the district court's practice and continue to refer to her as Ms. Oliver.

[2] The Quynn's company, Guernsey Bowl, LLC, was joined as an indispensable party plaintiff after the litigation had commenced.

unenforceable because the restraint is greater than needed to protect Ms. Oliver's legitimate interest; and

4.      Whether the district court properly held the covenant not to compete restricting the Quynns' sale of alcohol is unenforceable because the threatened harm to the Quynns outweighs the need and harm of Ms. Oliver.

## *FACTS*

[¶3]   In 1965, Anthony and Nancy Testolin owned and operated Crazy Tony's restaurant and bar on Lot C-2 in the West Subdivision of Guernsey, Wyoming.  In September of that year, the Testolins sold a portion of Lot C-2 (the west fifty-two feet, four-and-a-half inches of Lot C-2) to the Nickses.  The Nickses intended to operate a bowling alley on the property.  The Testolins and Nickses entered into a Party Wall Agreement, which was recorded in the property records a few days after the conveyance. The pertinent provisions of the Agreement read as follows:

> That the parties have, heretofore, constructed on the boundary line between their respective properties, a Party Wall.

> That the parties, for and in consideration of these premises and of the mutual covenants and agreements herein contained, do for themselves, their respective heirs, executors, administrators and assigns, covenant and agree to and with each other, as follows: . . .

> 4.      That said Party Wall, as now constructed, has a doorway or doorways from the Nicks property, which shall be used for a bowling alley, into the TESTOLIN property, which shall be used for a restaurant and bar and lounge.  NICKS do hereby agree that they will not lock said doors, but shall permit free access to TESTOLIN'S building through the doorways in said Party Wall, at all hours when said bowling alley is open for business.

> That NICKS does hereby agree with TESTOLIN that he will not, nor will he permit others, to sell any beer, liquor or other alcoholic beverages in his building located upon said premises.  The parties understand and agree that this covenant is included herein for the purpose of prohibiting any competition in the sale of alcoholic beverages between the parties and their respective businesses.

2

Through mesne conveyances, Ms. Oliver now owns the bar and restaurant, and the Quynns own the bowling alley. The Quynns were aware of the Agreement when they purchased the bowling alley in 2009.

[¶4]    Despite their knowledge of the Agreement, the Quynns sought and obtained a liquor license to sell beer and wine in the bowling alley. They also built an interior wall blocking the doorway between the establishments. Ms. Oliver sent the Quynns a letter protesting their violation of the Agreement. The Quynns responded by filing a declaratory judgment action contesting the enforceability of the Agreement.

[¶5]    Both parties filed motions for summary judgment. After a hearing on the motions, the district court entered summary judgment, ruling that: (1) the "covenant not to compete in the sale of alcoholic beverages is unenforceable and void as a matter of law," (2) the covenant not to compete is severable, and other provisions of the Agreement are enforceable, and (3) the Quynns are enjoined to remove the interior wall blocking the doorway and permit ingress and egress between the businesses as provided in the Agreement. Ms. Oliver appealed the district court's determination that the restriction prohibiting the sale of alcohol in the bowling alley is unenforceable. The district court's ruling with regard to the enforceability of the remainder of the Agreement is not at issue.[3]

## *STANDARD OF REVIEW*

[¶6]    Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Comet Energy Services, LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 5, 185 P.3d 1259, 1261 (Wyo. 2008). "Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision." *City of Cheyenne v. Board of County Comm'rs of Laramie*, 2012 WY 156, ¶ 4, 290 P.3d 1057, 1058 (Wyo. 2012).

## *DISCUSSION*

[¶7]    In her first issue, Ms. Oliver contends that the terms of the Agreement are equitable servitudes binding on the real property and parties. Though not entirely clear, her argument seems to be that the Agreement is an equitable servitude rather than a

---

[3] We note in particular that the district court ruled that the Quynns "may sell 'food and food stuffs' in direct competition" with Ms. Oliver. That portion of the district court's decision was not appealed. In addition, the Quynns did not appeal the district court's ruling that the Agreement prohibited them from blocking the doorway between the businesses.

3

covenant that runs with the land. The key distinction is that a covenant that runs with the land is enforceable whether or not the owner has notice of it, while an equitable servitude is enforceable only if the owner took the property with notice of the servitude. *Streets v. J M Land & Developing Co.*, 898 P.2d 377, 379 (Wyo. 1995), citing 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 304, 868 (1965). In this case, it is undisputed that the Quynns took the property with notice of the Agreement. The Agreement is therefore enforceable to the same extent whether it is deemed an equitable servitude or a covenant that runs with the land.

[¶8]    In its summary judgment decision, the district court ruled that Ms. Oliver had the burden of proving that the Agreement was reasonable. In its order, the district court stated:

> In Wyoming, a valid and enforceable covenant not to compete requires a showing that the covenant is "(1) in writing; (2) part of a contract of employment; (3) based on reasonable consideration; (4) reasonable in durational and geographical limitations; and (5) not against public policy." *Hopper, D.V.M. v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 540 (Wyo. 1993) (citations omitted). "The reasonableness of a covenant not to compete is assessed based upon the facts of the particular case and a review of all of the circumstances." *Id.* (citation omitted).

> > The common law policy against contracts in restraint of trade is one of the oldest and most firmly established. The traditional disfavor of such restraints means covenants not to compete are construed against the party seeking to enforce them. ***The initial burden is on the employer to prove the covenant is reasonable and has a fair relation to, and is necessary for, the business interests for which protection is sought***.

> *Id.* at 539 [(citations omitted)].

(Emphasis added.) The district court determined that Ms. Oliver had not carried her burden of proving that the Agreement was reasonable.

[¶9]    Ms. Oliver asserts that the district court incorrectly placed the burden of proof. She points out that *Hopper*, the case relied upon by the district court, addressed the enforceability of a covenant not to compete included in an employment contract. *Hopper*, 861 P.2d at 535. The Agreement at issue here is not part of an employment

4

contract, and on that basis, Ms. Oliver contends that a more directly applicable case is *Holland v. Holland*, 2001 WY 113, 35 P.3d 409 (Wyo. 2001), which addressed a lifetime non-competition agreement between an ex-husband and an ex-wife. In that case, we considered Mr. Holland's claim that the agreement was unenforceable as a matter of law:

> As a starting point for his contentions, Husband posits that non-competition agreements are void and unenforceable. Of course, that is a considerable exaggeration. To bolster his argument, Husband relies in significant part on our decision in *Hopper*. In that case, we set out some of the basic policies with respect to the enforcement of a covenant not to compete between an employer and an employee. 861 P.2d at 539-47. However, *Hopper* is a case that deals with the covenant not to compete in the context of the employer-employee relationship and has only tangential applicability to the facts and circumstances of this case. In *Ridley v. Krout,* 63 Wyo. 252, 180 P.2d 124, 127 (Wyo. 1947), we referred to the principle that is specifically at issue in this case, *i.e.*, that **courts are less disposed to sustain an agreement which forms part of a contract for employment, than where similar agreements are attached to a contract of sale**. *Also see* 17 C.J.S. Contracts § 96 at 564 (1999). The reason for that difference is that in a case such as this, there is less likely to be hardship to the promissor and less chance of any injury to the public. An important part of our analysis must include a weighing of the right to contract with the public policy to the effect that, in some circumstances, such covenants are not favored. We conclude that the covenant at issue here most closely resembles one incident to a contract of sale.

*Holland*, ¶ 12, 35 P.3d at 413 (emphasis added). We recognized that the non-competition agreement in *Holland* was not part of a contract of employment, but instead "most closely resemble[d] one incident to a contract of sale." *Id*. Thus, "[u]nlike the situation in the employer-employee covenant not to compete, in the circumstance of the sale of a business, the burden is on the one challenging the covenant not to compete." *Id*., ¶ 10, 35 P.3d at 413. Ultimately, we concluded that Mr. Holland had "failed to demonstrate that the lifetime covenant not to compete is unreasonable." *Id*., ¶ 20, 35 P.3d at 415.

[¶10] In the case before us now, the Agreement was not part of an employment contract. It was made in connection with the sale of property. Consistent with *Holland*, the burden is on the Quynns to prove that the Agreement is unreasonable. The district court erred in placing the burden on Ms. Oliver to prove the Agreement reasonable.

[¶11] The district court ruled, and the parties do not dispute, that the Agreement's prohibition on the sale of alcoholic beverages in the Quynns' bowling alley acts as a restraint on trade. Long ago, in *Dutch Maid Bakeries v. Schleicher*, 131 P.2d 630, 634 (Wyo. 1942), we recognized that a "bargain is in restraint of trade when its performance would limit competition in any business or restrict a promisor in the exercise of a gainful occupation, and the bargain is illegal if the restraint is unreasonable." The rule is articulated this way in the Restatement (Third) of Property: Servitudes § 3.6 (2000): "A servitude that imposes an unreasonable restraint on trade or competition is invalid." As explained in Comment b to this section of the Restatement:

> The common law of unreasonable restraints on competition looks to the purpose, the geographic extent, and the duration of the restraint to determine whether it is reasonable. Covenants against competition that are tied to ownership of a particular parcel of land are seldom unreasonable because the impact is limited to one piece of land. The owner is free to engage in the activity elsewhere. However, if the restricted land is extensive, or it is the only land available in a market area for a particular use, the restriction is unreasonable if it will tend toward a monopoly or substantially restrict competition in the relevant market.

[¶12] This approach is supported by decisions from other jurisdictions dealing with restraints on trade. For example, in *Exit 1 Properties Ltd. Partnership v. Mobil Oil Corp.*, 692 N.E.2d 115, 116-17 (Mass. App. 1998), the owner of a gas station agreed not to sell certain foods, and the owner of the nearby restaurant agreed not to sell petroleum products. Twenty-three years after this agreement was made, the owner of the gas station expanded his business to include food sales. The owner of the restaurant sued to enforce the non-competition agreement.

[¶13] The Massachusetts Court of Appeals stated that "Purpose, geographic extent, and duration are among criteria for testing reasonability." *Id.* at 117. In support of this approach, it cited the Restatement (Third) of Property: Servitudes § 3.6 cmt. b and several decisions from other states. *Id.* at 117-18. Even though the non-competition agreement had a fifty-year duration, it was still found reasonable:

> In its origins, the restriction was reasonable. Each party invested capital on the strength of an arrangement that it would draw customers travelling on the Boston and New York run, reinforced by the other's business, and not compete with one another. It is no less reasonable twenty years later because the successor of one of the parties finds it tempting to be in both businesses.

6

*Id.* at 117. The covenant was deemed reasonable because its geographic extent was limited to a single parcel of property, and because its restriction applied only to food. *Id.* at 118.

[¶14] A similar result was reached in *Allemong v. Frendzel*, 363 S.E.2d 487 (W. Va. 1987). The owner of 256 acres in West Virginia conveyed three acres to another party subject to a restriction providing that, "no alcoholic beverages of any kind" could be sold on the three-acre parcel. *Id.* at 489. The successor in interest opened a convenience store on the parcel, applied for a beer license, and engaged in retail sale of beer for off-premises consumption. *Id.* Successors in interest to the larger parcel sued to enforce the restrictive covenant. The West Virginia Supreme Court of Appeals ruled that the covenant was enforceable, explaining as follows:

> The principal issue before us in this appeal is whether a restrictive covenant prohibiting the sale of alcoholic beverages as contained in a deed is enforceable against the current owners of the land who purchased the parcel with full notice of the terms of the restrictive covenant and took their property subject to the restrictions therein. . . .
>
> A restrictive covenant which provides "that no alcoholic beverages shall be sold on said premises, and this covenant shall run with the land" is valid. Where the grantor included the covenant in all subsequent deeds conveying a particular parcel of property with the intention to preserve and protect the quality of the neighborhood, a trial court may grant injunctive relief against a grantee who took the property with full notice of the restrictive covenant, provided that changes in the neighborhood's character are not so radical as to destroy the essential objects and purposes of the neighborhood's original plan of development.

*Id.* at 491-92.

[¶15] Consistent with the analysis in *Dutch Maid Bakeries*, *Exit 1 Properties*, and *Allemong*, we consider the purpose, geographic scope, and duration of the Agreement's restriction in order to determine whether it is reasonable. Significantly, "the reasonableness of a covenant not to compete is a question of law to be determined by the court and reviewed *de novo*." *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 13, 215 P.3d 1054, 1059 (Wyo. 2009). The parties represented to the district court that there were no genuine issues of material fact, and that the matter could be decided on their cross-motions for summary judgment. We agree that there are no

genuine issues of material fact.

[¶16]  The purpose of the Agreement from Ms. Oliver's point of view is to prevent the Quynns from competing with her in the sale of alcoholic beverages.  Ms. Oliver presented unchallenged evidence that she considered the prohibition a valuable factor when she purchased the restaurant and bar, and that sales in her business declined when the Quynns started selling alcoholic beverages in their bowling alley.  It is also significant that the restriction is quite limited in scope.  It "restricts the sale of only one type of item – alcoholic beverages."  *Allemong*, 363 S.E.2d at 493 n.2.  The Agreement serves the legitimate purpose of protecting Ms. Oliver's business, and based on its limited scope, it is not unreasonable.

[¶17]  The geographic scope of the Agreement is quite limited.  The restriction applies only to the Quynn's bowling alley property.  The Agreement does not prevent the Quynns from selling alcohol or operating a bowling alley at any other location they might choose.  As noted earlier, "Covenants against competition that are tied to ownership of a particular parcel of land are seldom unreasonable because the impact is limited to one piece of land.  The owner is free to engage in the activity elsewhere."  Restatement (Third) of Property: Servitudes § 3.6 cmt. b.  The Agreement is not unreasonable in geographic scope.

[¶18]  The Agreement does not establish a time limit on its restrictions, and the district court found that the prohibition on alcohol sales was unenforceable "primarily because of its forty-six year duration."  However, a "covenant will not be declared invalid merely because it is unlimited in duration if the other restrictions on geographic area and scope are limited and reasonable."  *Town Line Repairs, Inc. v. Anderson*, 455 N.Y.S.2d 28, 29 (N.Y. App. 1982); 54A Am.Jur.2d *Monopolies and Restraints of Trade* § 859 (2013) ("Covenants limited as to area may be enforced, even though they fail to specify a time limitation.").  We have already discussed the Agreement's limited scope and geographical coverage.  Our decision to uphold a lifetime non-competition agreement in *Holland*, ¶ 20, 35 P.3d at 415, suggests that otherwise reasonable restrictions may be enforced even if they are of long duration.  In this case, the district court upheld other provisions in the agreement, even though their duration is identical to that of the prohibition against sales of alcoholic beverages.

[¶19]  In *Allemong*, 363 S.E.2d at 492, the court indicated that a perpetual restriction on the sale of alcohol remained enforceable "provided that changes in the neighborhood's character are not so radical as to destroy the essential objects and purposes of the neighborhood's original plan of development."  This is consistent with our statement in *Keller v. Branton*, that, "[f]or a change in neighborhood to justify termination of an equitable servitude, such change must be of a radical and permanent nature."  *Id.*, 667 P.2d 650, 654 (Wyo. 1983), quoting 7 Thompson on Real Property, § 3174 (Bobbs-Merrill Company, Inc. (1962)).  In the case before us now, the district court took judicial

notice of the fact that liquor licenses are easier to obtain now than when the Agreement was made in 1965. However, the Quynns have provided no authority to demonstrate that this is such a radical and permanent change that it justifies termination of the prohibition on alcohol sales.

[¶20] The undisputed evidence shows that the two buildings are still used for a restaurant and bar and a bowling alley, the identical businesses contemplated when the Agreement was made. In *Exit 1 Properties*, 692 N.E.2d at 116, the prohibition on food sales had a stated duration of fifty years. The court found that this duration was reasonable, explaining that "the duration at this juncture is not inconsistent with the useful life of buildings." *Id.* at 118. Ms. Oliver continues to use her building as a restaurant, bar, and lounge, and the Quynns continue to use their building as a bowling alley, just as contemplated in the Agreement. Measured by the useful life of the buildings, the duration of the Agreement is not unreasonable at this juncture.

[¶21] In its summary judgment order, the district court correctly ruled that the Agreement must be tested by the "rule of reason." For the test of such a rule, it quoted Restatement (Second) of Contracts § 188 (1981):

> (1) A promise to refrain from competition that imposes a restraint that is ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade if
>
> > (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or
> >
> > (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.

Analyzing the Agreement under subsection (b), the district court found that it "unreasonably restrains trade because of the hardship threatened to the [Quynns]," based on the Quynns' testimony that "their business would fail without a liquor license." It concluded that while Ms. Oliver "certainly needs profits and business, a potential business failure outweighs a loss of business and profits."

[¶22] We are not in accord with the district court's analysis. We have cited § 188 of the Restatement (Second) of Contracts in two previous cases, but only in support of the general principle that the common law disfavored contracts in restraint of trade. *Hopper*, 861 P.2d at 539; *Preston v. Marathon Oil Co.*, 2012 WY 66, ¶ 15, 277 P.3d 81, 86 (Wyo. 2012). We did not mention the factors of hardship to the promissor and injury to the public. It has been asserted that § 188's focus on hardship to the promissor and injury to the public is misplaced and unsupported by authority. "Public injury or personal hardship alone have never been dispositive elements for not enforcing noncompetition covenants

otherwise reasonable in purpose, geographic scope, and duration. . . . In none of these cases [cited in the Appendixes] is enforcement denied because of the idiosyncratic hardship to the promisor, or any perceived harm to the pubic absent the creation or threat of monopoly." Milton Handler and Daniel E. Lazaroff, *Restraint of Trade and the Restatement (Second) of Contracts*, 57 N.Y.U. L. Rev. 669, 731 (1982). It seems more consistent with our Wyoming precedent to test the reasonableness of the Agreement by focusing on its purpose, geographic scope, and duration.

[¶23] Even if we were to adopt § 188 as Wyoming law, the hardship claimed by the Quynns is not the sort of hardship that courts rely on to find a restraint on trade unreasonable. Certainly the failure of a business would be a hardship. However, in order to render a restraint unreasonable, hardship to the promissor must be "excessive," as, for example, "if the restraint necessitates his complete withdrawal from business." Restatement (Second) of Contracts § 188 cmt. c (1981). An agreement not to compete may cause excessive hardship if it prevents the promissor from doing business anywhere in the relevant market. *See, e.g.*, *Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051, 1058 (R.I. 1989) (covenant imposed "undue hardship on Durapin by completely excluding it from access to almost all segments of the . . . market for a period of up to three years"). In contrast, a covenant prohibiting a dentist from practicing dentistry within five miles of his former office for a period of two years was found not to impose undue hardship. *Deutsch v. Barsky*, 795 A.2d 669, 679 (D.C. 2002), quoting *Karlin v. Weinberg*, 390 A.2d 1161, 1166 n.3 (N.J. 1978): A "mere showing of personal hardship does not amount to an 'undue hardship' that would prevent enforcement of the covenant." Similarly, in *Hopper*, 861 P.2d at 536, 543, we concluded that a restriction on a veterinarian was not unreasonable, in part because it applied only to the practice of small animal veterinary medicine in Laramie. The veterinarian could still engage in a large animal practice in Laramie, or in general practice anywhere except Laramie. The restraint did not cause the veterinarian to withdraw completely from the practice of veterinary medicine.

[¶24] The Agreement prohibiting the Quynns from selling alcohol in their bowling alley does not require their complete withdrawal from business. The restriction is limited to the current location of the bowling alley. It does not prohibit them from conducting their business at another location and selling alcohol there. The fact that their business might fail at its current location is not the sort of undue hardship that, under § 188 of the Restatement (Second) of Contracts, renders a restriction unreasonable and unenforceable.

[¶25] Further, if we were to apply § 188(1)(b), the Quynns would be required to demonstrate both that "the promisee's need is outweighed by the hardship to the promisor **and** the likely injury to the public." (Emphasis added.) The district court made no findings explicitly relating to public injury. It took judicial notice that bowling alleys in other nearby communities "have closed in recent years." This may have been meant to suggest that the public might be harmed if the Quynns closed their bowling alley.

10

However, the Quynns have cited no authority indicating that this is the kind or degree of pubic injury needed to render a restraint on trade unreasonable and unenforceable. "[I]n the few decisions directly addressing the issue, public injury as a defense against enforcement of an otherwise valid agreement has been rejected. Indeed, we have found no case declaring unenforceable, on public injury grounds, an otherwise valid covenant, absent the creation of a monopoly." Handler, *supra*, 57 N.Y.U. L. Rev. at 734. There is no evidence that the Agreement under review creates a monopoly.

[¶26] In *Field Surgical Assocs., Ltd. v. Shadab*, 376 N.E.2d 660 (Ill. App. 1978), the court upheld an agreement prohibiting a doctor from practicing medicine within five miles of his former office. With regard to whether the public was harmed because it was deprived of the services of this doctor, the court wrote,

> A restraint such as the present one is certainly not injurious to the public at large. Defendant can be equally useful to the public interest by practicing his medical specialty in some location other than the prohibited area since the health of individuals living elsewhere in this State is just as important. As was stated in *Canfield v. Spear* (1969), 44 Ill. 2d 49, 52, 254 N.E.2d 433, 435:
>
> > It cannot be said that the public interest is adversely affected if a physician decides to move from one community to another, nor does it become so if the move results from some agreement made in advance. If a severe shortage exists in any particular place young doctors will tend to move there, thus alleviating the shortage.

*Id*., 376 N.E.2d at 664. Similarly, the fact that the public might be deprived of the opportunity to bowl at the Quynns' current location is not a public harm severe enough to render the Agreement unreasonable.

[¶27] Although the Agreement may impose some personal hardship on the Quynns, we will not rewrite the Agreement "to rescue parties from the consequences of their unwisely made bargains." *Hunter v. Reece*, 2011 WY 97, ¶ 23, 253 P.3d 497, 503 (Wyo. 2011), quoting *Sowerwine v. Keith*, 997 P.2d 1018, 1020-21 (Wyo. 2000). When we test the enforceability of a restraint on trade, we encounter a conflict between two principles: the freedom to contract and the freedom to work or conduct business. *See Hopper*, 861 P.2d at 539; *Ridley*, 180 P.2d at 128. As noted before, we are more disposed to sustain an agreement in restraint of trade when it is between two businesses than when it is between an employer and an employee. We do "not lightly interfere with the freedom of contract between parties." *Pennant Serv. Co. v. True Oil Co., LLC*, 2011 WY 40, ¶ 30, 249 P.3d

11

698, 710 (Wyo. 2011); *see also Sinclair Oil Corp. v. Columbia Casualty Co.*, 682 P.2d 975, 978-79 (Wyo. 1984). The Quynns were aware of the Agreement's restrictions when they purchased the bowling alley in 2009, and they have not demonstrated that equity compels us to relieve them of the burdens imposed by the Agreement. *See Cash v. Granite Springs Retreat Ass'n*, 2011 WY 25, ¶ 33, 248 P.3d 614, 623 (Wyo. 2011).

[¶28] Given the undisputed facts in this case, we conclude that the Agreement's prohibition of alcohol sales in the bowling alley is not unreasonable. The Agreement is limited in its purpose and scope, and quite limited in its geographical coverage. Its long duration, by itself, is insufficient to render the Agreement unreasonable at this point in time. The provision of the Agreement prohibiting the Quynns from selling alcohol in their bowling alley is therefore enforceable. We reverse the district court's decision with regard to this provision, and remand with instructions to enter summary judgment for Ms. Oliver on this issue.